

**McCARTHY LEBIT CRYSTAL & LIFFMAN CO., LPA**
101 W. Prospect Ave., Suite 1800, Cleveland, OH 44115-1088

JACK E. MORAN
Attorney at Law
Phone: 216.696.1422, Ext. 143
jem@mccarthylebit.com

July 6, 2021

**VIA CM/ECF FILING**

The Honorable Benita Y. Pearson
United States District Court, Northern District of Ohio
313 Thomas D. Lambros United States Federal Building and Courthouse
125 Market Street
Youngstown, Ohio 44503-1780

      Re:    **Jaffer v. Steward Medical Group**
               U.S. District Court, Northern District of Ohio, Eastern Division
               Case No. 4:21-cv-00723-BYP

Dear Judge Pearson:

       Pursuant to Loc.R. 37.1 and the Case Management Order entered in this matter on May 19, 2021 (ECF 12), counsel for Plaintiff, Dr. Adil Jaffer ("Plaintiff"), hereby submits this letter regarding a discovery dispute with Defendant, Steward Medical Group ("Defendant"). With respect to the first issue set forth below, and as explained more fully herein, Plaintiff's counsel attempted to confer with Defendant in writing and over telephone in the last several weeks, but simply has heard no substantive response to the deficiencies in Defendant's discovery production. Regarding the second issue set forth herein, Defendant will not provide Plaintiff with any commitment on a timetable for the production of e-discovery, a process that Defendant inexplicably did not start until late June 2021. Because of the discovery that needs to be completed and the schedule established in this case, Plaintiff's counsel believes that Court intervention will greatly assist the parties in advancing discovery in this matter.

                     I.      **Plaintiff's Discovery Requests**

       The first dispute arises from Defendant's answers and responses to Plaintiff's First Set of Interrogatories and First Requests for Production of Documents, served on Defendant on April 30, 2021.[1] Due to the Memorial Day holiday weekend, Defendant's responses to these requests were originally due on June 1, 2021. In the intervening time period, the Court and the parties conducted the Case Management Conference,[2] at which point the Court expressed its directive that counsel seek to meet a more aggressive discovery schedule than they had originally proposed in their Rule 26 report.



EXHIBIT A

---

[1]    The parties conferred on April 28, 2021 in compliance with Rule 26(f).

[2]    The Case Management Conference was held telephonically on May 19, 2021.

The Honorable Benita Y. Pearson
July 6, 2021
Page 2

Shortly after the CMC, Defendant asked for an extension of time in producing its discovery responses. To ensure case progress, but also in an attempt to work professionally with opposing counsel, Plaintiff agreed to a limited extension of time, with responses due on June 16, 2021. (See, May 26, 2021 e-mail, attached hereto as **Exhibit 1**.)

On June 16, 2021, Defendant produced a grossly deficient set of answers and responses to Plaintiff's first discovery requests. (See, Defendant's Responses to Plaintiff's First Discovery Requests, attached hereto as **Exhibit 2**.) Merely by way of example, Defendant objected to simply identifying the individuals involved in the decision to terminate Plaintiff's employment, agreeing to produce only a "non-exhaustive list," consisting of only two people. See Interrogatory No. 7. Even though Defendant's referral policies and practices are central to this case, Defendant refused to provide any information about any complaints or concerns related to those policies or practices, despite Plaintiff seeking only information within a recent temporal scope. See Interrogatory Nos. 16 & 17, Document Requests Nos. 30 & 31. And, even though many of the documents sought by Plaintiff could not be reasonably classified as e-discovery, Defendant withheld production of essentially all responsive documents (e.g., personnel files, insurance policies, etc.) based on a supposed need for an e-discovery protocol.[3]

Given the specific needs of this case, this sort of delay and deficient production will severely prejudice Plaintiff's case. Due to the unique nature of Plaintiff's False Claims Act retaliation claims, for example, Plaintiff must explore in discovery not only the "typical" anti-retaliation issues related to performance, causation, decision-maker motivations, and damages, but also more complex and interrelated issues such as (i) Defendant's Stark Law and Anti-Kickback Statute compliance; (ii) Defendant's compensation policies and methodologies (related to issue (i)); (iii) Defendant's communication with the federal government; (iv) statutory and regulatory exceptions to the Stark Law and Anti-Kickback Statute; and (v) the financial and organizational interrelationships between Defendant and its Northeast Ohio affiliates (to whom Plaintiff was directed to refer patients). Plaintiff must also conduct discovery related to Defendant's knowledge of and compliance with Ohio's public policies, statutes, and regulations related to referrals, continuity of patient care, and physician departures. This discovery must be done in a way that Plaintiff can, if necessary, issue another limited set of written discovery to more targeted issues (once those issues have been narrowed), work with an expert witness on one or more of the matters identified above, potentially seek to amend the parties named as defendants in this case, and then conduct depositions, all within the prescribed time periods.

Because of the urgency created by Defendant's production, Plaintiff's counsel prepared and sent a comprehensive letter outlining the many discovery deficiencies within 48 hours of receiving Defendant's production (the "Deficiency Letter"). (See, Deficiency Letter, attached

---

[3] Indeed, the only document production made by Defendant consisted of simply sweeping Plaintiff's email account and producing as separate, individual files all emails sent or received by Plaintiff, even though this was **not** a specific request propounded by Plaintiff.

{01592344-1}

The Honorable Benita Y. Pearson
July 6, 2021
Page 3

hereto as **Exhibit 3**.) In an effort to keep this case on track, the Deficiency Letter sought a response and a cured production from Defendant within 10 days, or by June 28, 2021.

To date, however, Defendant has provided **no substantive response** to the issues outlined in the Deficiency Letter, even though it has promised one is forthcoming. Plaintiff has followed up with email, but to no avail. In telephone calls with Defendant's counsel last week regarding e-discovery matters (a separate issue discussed below), some of the disputes outlined in the Deficiency Letter were referenced as Plaintiff awaiting Defendant's more formal response. Those discussions, however, did not resolve any issues, as Defendant's position remained unclear and unfixed.[4]

As such, and in order to move this case forward, Plaintiff merely seeks a deadline for Defendant to produce the information originally sought in his April 30, 2021 requests.

## II. e-Discovery Dispute

The second dispute arises from Defendant's belated assertion of e-discovery production problems. Even though Plaintiff issued his First Requests for Production of Documents on April 30, 2021, Defendant **never** raised any concern about the scope of e-discovery until June 16, 2021 (well after (i) the parties' Rule 26 conference, (ii) the Case Management Conference, and (iii) Defendant's request for an extension of time). On that date, together with the deficient production described above, Defendant invited Plaintiff for the first time to propose search terms and the identity of custodians, apparently so that Defendant could merely **begin** the process of searching for e-discovery. Thus, despite having requests in-hand in April, Defendant has not even started looking for responsive electronic data yet. Defendant has never offered any explanation for why it waited until its discovery was overdue before even starting the e-discovery process.

---

[4] For example, in an effort to narrow the legal issues arising from Plaintiff's False Claims Act retaliation claim, Plaintiff's Interrogatory No. 9 asked Defendant to identify which of the many Stark Law exceptions it believes justified Plaintiff's compensation structure (and thereby justified Defendant's representations to the federal government of legal compliance). Defendant objected to this request and provided no information. Then, in telephone calls, Defendant first took the position that the Stark Law simply does not apply to Plaintiff's compensation. Given that response, Plaintiff's counsel asked Defendant the next day by telephone to stipulate that it would not assert any Stark Law exceptions in the future of this case (thereby neutralizing the need for further discussion over this Interrogatory). Defendant's counsel, however, refused and stated that Defendant reserves the right to raise Stark Law exceptions at a later time. Plaintiff merely wants to know which of those exceptions will be asserted, so as to avoid any unfair surprise at a later stage of the case.

The Honorable Benita Y. Pearson
July 6, 2021
Page 4

Nevertheless, in an effort to confer and solve the problem, Plaintiff's counsel quickly included e-discovery parameters in his June 18, 2021 Deficiency Letter.[5] Upon inquiry from Defendant's counsel, Plaintiff also clarified the temporal scope of the search. (See, June 22, 2021 email, attached hereto as **Exhibit 4**.)

Unfortunately, ten (10) days after the Deficiency Letter, Defendant began asserting that it would take three weeks – at best – to transfer the e-discovery from the identified custodians' email accounts into Defendants' counsel's e-discovery platform. While Plaintiff's counsel's office believes that such a transfer should probably only take a few days, Defendant has been clear that it may very well take it longer than three weeks simply to **move** the information.

Based on Defendant's proposed order of operations, its counsel will not even start the process of searching for responsive materials until after the data has been transferred to their office's e-discovery platform. (See, June 28, 2021 email correspondence, attached hereto as **Exhibit 5**.) Defendant's counsel has emphasized that it simply cannot provide any time period within which they will be able to search, review, and produce the data. Stated otherwise, Defendant does not know how much data has been requested, because it has not even started to search for it. As a result, Defendant cannot or will not say when this overdue discovery will be produced. Plaintiff's counsel has stated repeatedly that he is of course willing to discuss creative solutions and/or revisions to the search terms employed (if their application merits it), but at this point Defendant has not even started the process to see how much data is in question.

To expedite the process, Plaintiff proposed that Defendant use its own email hosting platform or email archiver to search for the requested data, which would avoid the three-week period of transporting the data to Defendant's counsel's e-discovery platform. Defendant refused that solution, stating (contrary to Plaintiff's information) that it would take longer. (See, July 1, 2021 email, attached hereto as **Exhibit 6**.) So, to get a sense of the overall impact of Defendant's position, Plaintiff asked for a total timetable to transport, review, and produce – but Defendant is unable or unwilling to produce such a schedule. Lastly, Plaintiff alternatively proposed that, to keep the parties on track, they agree to a specific schedule that (i) allows Defendant a limited period of time to move the data to its platform, and (ii) provides an additional, bounded window of time for Defendant to review and produce the data, all with the expectation that Plaintiff will

---

[5] More than half of the custodial accounts proposed by Plaintiff are individuals identified by Defendant in its initial disclosures and/or discovery answers. Defendant was thus well aware, before any letter from Plaintiff's counsel, that these individuals' email accounts would be relevant to the dispute. According to Defendant, the remaining custodial accounts requested by Plaintiff average a relatively-small size of only 23.69 GB.

The Honorable Benita Y. Pearson
July 6, 2021
Page 5

continue to work cooperatively on search terms. But Defendant also does not agree to that proposal.[6] (See, July 2, 2021 email, attached hereto as **Exhibit 7**.)

At this point, Plaintiff seeks an Order consistent with its last, reasonable proposal to Defendant: (i) a three-week window to transfer the data to its counsel's platform, and (ii) a four-week window within which Defendant can apply search terms, confer with Plaintiff, and produce data. Because the entire process should have started, at the latest, shortly after Defendant received Plaintiff's document requests in April, Plaintiff respectfully asks that the Court extend the pleadings amendment deadline and discovery cutoff in a like-kind increment (seven weeks) so that Plaintiff is not prejudiced by Defendant's delay. Of course, Plaintiff's counsel fully understands that he must continue to work cooperatively with Defendant's counsel in navigating and, if appropriate, revising e-discovery search terms so as to limit any undue burden on Defendant, particularly once Defendant's counsel applies the original search terms and/or provides the information that Plaintiff originally requested in his discovery requests.

Sincerely,

Jack E. Moran

JEM/
Attachments

---

[6] Indeed, the only term Defendant seems willing to discuss is a restriction of Plaintiff's proposed temporal scope. But as Plaintiff has explained to Defendant, restricting the temporal scope is, most importantly, premature given that Defendant does not even know how much responsive data exists. Second, Defendant wants to impose a time period that covers only part (or none) of 2017, which it knows will **necessarily** exclude discovery related to, for example, establishing Plaintiff's compensation, pricing Plaintiff's medical practice, and other information immediately relevant to this case. Further, Defendant also seeks to bar Plaintiff from conducting discovery in the time period after his employment ended, which would of course prejudice Plaintiff's ability to explore, *inter alia*, (a) post-employment discovery related to the handoff of Plaintiff's patients (directly related to Count III); (b) Defendant's termination of other nearby-area physicians in the 6-9 month time period after Plaintiff was informed of termination, whose terminations may be related to Plaintiff and/or who may serve as comparators to Plaintiff in this case; (c) the evolution of Defendant's referral practices and policies over time; and other relevant issues. As a result, Defendant's proposed temporal restrictions simply are exceedingly likely to result in second and third rounds of searches, leading to more delay. Further, there is nothing per se unreasonable about the relatively-limited period of time sought by Plaintiff (4.5 years).

{01592344-1}